UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
AMERICAN PETROLEUM AND TRANSPORT, INC.,   :
                                                          :               12 Civ. 3633 (PAE)
                                      Plaintiff,          :
                                                          :           OPINION & ORDER
                       -v-                                :
                                                          :
THE CITY OF NEW YORK and THE DEPARTMENT   :
OF TRANSPORTATION OF THE CITY OF NEW      :
YORK,                                                     :
                                                          :
                                      Defendants.         :
                                                          :
------------------------------------------------------------------------X


PAUL A. ENGELMAYER, District Judge:

        In this admiralty case, plaintiff American Petroleum and Transport, Inc. ("American"),

the owner of a barge, seeks to recover economic damages to its business resulting from the

unexpected closure of a drawbridge owned and operated by defendant the City of New York

("the City").[1]  The City has moved to dismiss, on the grounds that under a line of cases arising

out of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), economic losses caused by

an unintentional maritime tort are not recoverable where the plaintiff has not suffered personal

injury or physical damage to its property.  For the reasons stated herein, the motion to dismiss is

granted.

---

[1] American has also sued the Department of Transportation of the City of New York.  However,
the City is the only proper defendant, because the City's departments are not separate suable
entities.  *See Jenkins v. City of New York,* 478 F.3d 76, 93 n.19 (2d Cir. 2007); New York City
Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any
law shall be brought in the name of the city of New York and not in that of any agency, except
where otherwise provided by law.").

                                                1

I.      **Background**[2]

American, incorporated in New York State, was in the business of transporting petroleum products by water.  Compl. ¶¶ 1, 9.  On March 1, 2011, American owned a barge, the *John Blanche*, and was the demise charterer[3] of a tug, the *Caspian Sea* (together, the "tug and barge").  *Id.* ¶¶ 7–8.  That day, the tug and barge entered into the Hutchinson River.  However, a drawbridge owned and/or operated by the City—the Pelham Parkway (or Shore Road) Bridge—failed to open to vessel traffic.  *Id.* ¶ 12.  American alleges that the City had been timely notified of the need for the drawbridge to be open to permit the tug and barge to pass through.  *Id.*  The drawbridge's functionality was not restored until March 3, 2011, and the drawbridge did not open to vessel traffic until that afternoon.  *Id.* ¶ 13.  As a result of the drawbridge's closure, the tug and barge was delayed by approximately two and one-half days.  *Id.*

As a result of the delay, American alleges it suffered $28,828 in monetary damages.  These consist of $21,000 in lost work previously contracted; $4,500 in crew wages; $2,000 in rent of the tug; $500 in fuel; and $828 in insurance.  *Id.* ¶ 14.  American does not claim to have suffered any property damage or physical injury.

On May 8, 2012, American filed its Complaint in this District.  It brings causes of action for common law negligence, *id.* ¶¶ 18–19, and for violation of 33 U.S.C. § 494, which requires

---

[2] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the plaintiff's Complaint to be true.

[3] In a demise, or "bareboat," charter, the charterer is owner *pro hac vice*.  "To create a demise the owner of the vessel must completely and exclusively relinquish possession, command, and navigation thereof to the demisee.  It is therefore tantamount to, though just short of, an outright transfer of ownership."  *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962) (citation and quotation marks omitted); *see also Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Assocs., Inc.*, 436 F. App'x 4, 5 n.1 (2d Cir. 2011) ("A demise charter party transfers full possession and control of the vessel to the charterer for the period of the contract, and the charterer is treated as the owner of the vessel for most purposes." (quotation marks omitted)); *accord* Thomas J. Schoenbaum, 2 Admiralty & Mar. Law § 11-3 (5th ed.); 22 Williston on Contracts § 58:6 (4th ed.).

that a drawbridge over navigable water "be opened promptly by the persons owning or operating such bridge upon reasonable signal for the passage of boats and other water craft." *Id.* ¶¶ 15–17.

On July 2, 2012, the City filed a motion to dismiss.  Dkt. 8–10.  On July 20, 2012, American filed a memorandum of law in opposition to that motion.  Dkt. 12.  On July 31, 2012, the City filed a reply.  Dkt. 13.

## II.   Discussion

The City moves to dismiss on the grounds that, under a line of maritime tort law cases tracing to *Robins Dry Dock*, recovery is barred for economic loss in the absence of physical harm.  American disputes this reading of the law, arguing that the *Robins Dry Dock* rule is addressed to more limited circumstances not present here.

### A.   Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw[] all inferences in the plaintiff's favor.  *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.").  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### B.   Analysis

In *Robins Dry Dock*, the propeller of a vessel was negligently damaged while undergoing scheduled maintenance at a dry dock.  The damage delayed, by two weeks, the vessel's return to operation.  During that time, the vessel was subject to a time charter.  The time charterer sued the dry dock to recover profits lost while the vessel was out of commission.  *Robins Dry Dock*, 275 U.S. at 307–08.  The Supreme Court denied recovery.  It held that the charterer's loss arose only as a result of the lost benefit of the contract, and that the plaintiff, lacking a protected interest in the vessel itself, had no recovery in tort.  Writing for the Court, Justice Holmes stated: "[A]s a general rule . . . a tort to the person or property of one man does not make the tort feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong.  The law does not spread its protection that far."  *Id.* at 309 (citation omitted).

The issue presented by the City's motion to dismiss is whether the "*Robins Dry Dock* rule," as the case law has come to refer to it, precludes American from recovery here.  American is quite correct that, on its facts, *Robins Dry Dock* itself does not address the situation presented here:  a claim for economic damages by a vessel's owner (as opposed to a time charterer).  However, since that decision, the courts in this Circuit have extracted from it a broader prohibition with respect to maritime tort suits that is fatal to American's negligence claim here.

Specifically, as the Second Circuit has stated, the *Robins Dry Dock*  rule "effectively bars recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a proprietary interest."  *G&G Steel, Inc. v. Sea Wolf Marine Transp., LLC*, 380 F. App'x 103, 104 (2d Cir. 2010) (summary order); *see also Gas Natural SDG S.A. v. United States*, No. 07-2129-CV, 2008 WL 4643944, at *1 (2d Cir. Oct. 21, 2008) (summary order) ("[T]here exists a 'bright line rule barring recovery for *economic losses* caused

by an unintentional maritime tort absent physical damage to property in which the victim has a *proprietary interest*.'" (quoting *Conti Corso Schiffahrts-GMBH & Co. KG NR. 2 v. M/V "Pinar Kaptanoglu*," 414 F. Supp. 2d 443, 446–47 (S.D.N.Y. 2006)) (emphasis added by *Gas Natural SDG*)); *Brown v. Royal Caribbean Cruises, Ltd.*, No. 99 Civ. 11774 (KMW), 2000 WL 34449703, at *5 (S.D.N.Y. Aug. 24, 2000) (in the Second Circuit, "plaintiffs who suffer no physical injury to their person or property from an alleged maritime tort may not recover for alleged economic losses, even though such losses may be deemed a foreseeable consequence of defendant's conduct"); *Allders Int'l (Ships) Ltd. v. United States*, No. 94 Civ. 5689 (JSM), 1995 WL 251571, at *1 (S.D.N.Y. April 28, 1995) ("Most courts have read *Robins Dry Dock* to establish a bright line rule against recovery for economic loss caused by an unintentional maritime tort absent physical damage to property.").

To be sure, many of the cases in which the *Robins Dry Dock* rule is thus articulated are factually distinguishable, in that, as in *Robins Dry Dock* itself, the plaintiffs were charterers who lacked a proprietary interest in the vessel in question, and it was on that basis that the rule was held to bar recovery.  *See, e.g.*, *G&G Steel*, 380 F. App'x at 104 (affirming grant of summary judgment against plaintiff based on absence of proprietary interest); *Gas Natural SDG*, 2008 WL 4643944, at *3–4 (same); *Fed. Commerce & Navigation Co. v. The M/V Marathonian*, 392 F. Supp. 908, 909–10 (S.D.N.Y.) (granting judgment on pleadings against claim by time charterer), *aff'd*, 528 F.2d 907 (2d Cir. 1975).  *But see Allders Int'l*, 1995 WL 251571, at *2 (dismissing plaintiff's claim based on absence of physical damage); *cf. Dick Meyers Towing Serv., Inc. v. United States*, 577 F.2d 1023, 1025 (5th Cir. 1978) (holding that *Robins Dry Dock* rule precludes economic-damage claims by owners and operators, not only third parties incidentally affected by the defendant's negligence).  There is also dicta in a 1968 case in which the Second Circuit

indicated a desire to depart from the *Robins Dry Dock* rule in favor of traditional, and more

flexible, tort-law notions of proximate cause and foreseeability.  *See Petition of Kinsman Transit*

*Co.* ("*Kinsman II*"), 388 F.2d 821, 824–25 (2d Cir. 1968).   And some decisions in this Circuit

since *Kinsman II* have criticized, or noted others' criticism of, such a bright-line rule, as to both

the requirements of proprietary interest and of physical damage.  *See Fed. Commerce &*

*Navigation Co.*, 528 F.2d at 908 (noting arguments for and against bright-line rule as to time

charterers); *Allders*, 1995 WL 251571, at *1 (collecting post-*Kinsman II* cases); *Fed. Commerce*

*& Navigation Co.*, 392 F. Supp. at 912–13 (noting that "[w]ere this Court now free to write upon

a tabula rasa and not constrained by the weight of precedent, we would reject the [contract-based

*Robins Dry Dock* rule] in favor of a negligence-causation-foreseeability analysis" such as that

articulated in *Kinsman II*).

However, in light of the Second Circuit's repeated articulation of the *Robins Dry Dock*

rule to prohibit recovery of economic losses in cases of unintentional maritime torts where there

has been no allegation of physical damage to property, including where the plaintiff is the owner

of the vessel, it is not for this Court to reassess the wisdom of that rule.  Any such reassessment

is properly the province of the Second Circuit or the Supreme Court.  *See Fed. Commerce &*

*Navigation Co.*, 528 F.2d at 908.  Moreover, the *Robins Dry Dock* rule has defenders along with

its detractors.  A number of sister circuits with significant maritime dockets have adopted the

same bright-line rule.  They have justified the *Robins Dry Dock* rule on the grounds that it is a

uniform rule which advances judicial economy, serves to limit expansive and potentially vast tort

liability to parties remotely injured by maritime events, and leaves maritime players at liberty to guard against risk by insurance, contract, or other business planning devices.[4]

Consequently, American, having alleged only economic loss to itself, and not physical damage, as a result of the temporary closure of the Pelham Parkway bridge, may not recover in maritime tort. The Court is, therefore, compelled to dismiss its negligence claim.

American alternatively argues that, even if its negligence claim is barred as a matter of law, its separate claim based on 33 U.S.C. § 494 survives. This statute, part of the Bridge Act of 1906, 33 U.S.C. §§ 491–498, imposes certain duties upon bridge owners and operators, who may suffer fines and imprisonment for failing to open bridges properly. The statute, however, has been widely held not to provide an implied private right of action. *See, e.g.*, *Channel Star Excursions v. S. Pac. Transp. Co.*, 77 F.3d 1135, 1136–37 (9th Cir. 1996) (collecting cases, from majority of circuits, so holding). Thus, while a defendant's violation of 33 U.S.C. § 494 may be relevant evidence of the standard of care in a negligence action, *see, e.g.*, *Nassau Cnt'y Bridge Auth. v. Tug Dorothy McAllister*, 207 F. Supp. 167, 171–72 (E.D.N.Y. 1962), *aff'd*, 315 F.2d 631 (2d Cir. 1963), including insofar as it may shift the burden of proof, *accord The Pennsylvania*, 86 U.S. 125, 126 (1873); *Mar. & Mercantile Int'l LLC v. United States*, No. 02 Civ. 1446 (KMK), 2007 WL 690094, at *18–*19 (S.D.N.Y. Feb. 28, 2007), such a violation does not give

---

[4] *See, e.g.*, *Getty Refining & Marketing Co. v. MT FADI B*, 766 F.2d 829, 832–33 (3d Cir. 1985); *Barber Lines A/S v. N/V Donau Maru*, 764 F.2d 50, 51–52 (1st Cir. 1985) (Breyer, C.J.); *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1022–23 (5th Cir. 1985) (en banc) ("*Robins* was a pragmatic limitation imposed by the [Supreme] Court upon the tort doctrine of foreseeability."); *Kingston Shipping Co. v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982). Other circuits, however, have eschewed the *Robins Dry Dock* rule in favor of applying fact-dependent tort principles; and even circuits that have followed *Robins* have sometimes carved out exceptions, such as to protect fisherman plaintiffs. *See generally* Trey D. Tankersley, "The *Robins Dry Dock* Rule: The Tar Baby of Maritime Tort Law," 25 Tul. Mar. L.J. 371 (2000) (canvassing and commenting on each circuit's treatment of *Robins Dry Dock*).

rise to a freestanding claim for relief in a private lawsuit.  This claim must, therefore, also be dismissed.

## CONCLUSION

For the reasons stated, American's Complaint fails to state a claim, and is, therefore, dismissed.  The Clerk of Court is directed to terminate the motion pending at docket number 8, and to close this case.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: October 10, 2012
         New York, New York